```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION
```

FIRST AMERICAN TITLE INSURANCE        *
COMPANY,
                                      *
    Plaintiff,
                                      *
vs.                                              CASE NO. 4:12-CV-10 (CDL)
                                      *
MICHAEL A. EDDINGS, COLUMBUS
BANK AND TRUST COMPANY, *et al.*,     *

    Defendants.                      *

## O R D E R

This action arises from the misappropriation of funds from a lawyer's trust account. That misappropriation eventually caused the trust account to have insufficient funds to make legitimate disbursements to close real estate transactions. In some of those transactions, Plaintiff First American Title Insurance Company, a title insurance company, had to make payments to cover the payoffs that should have been made with funds from the lawyer's trust account had those funds not been misappropriated. First American brings this present action to recover the amounts it had to pay because of the misappropriation. First American asserts claims for breach of contract, indemnification, professional negligence, fraud, conversion, unjust enrichment, punitive damages, and attorneys' fees against lawyer Michael A. Eddings, his law firm, the law

firm's business manager, the law firm's title insurance agency, and various businesses associated with the lawyer which allegedly received misappropriated payments. First American also asserts a claim against Columbus Bank and Trust Company ("CB&T"), which was the bank for the Eddings trust account, claiming that CB&T was aware that funds were being misappropriated from the trust account and failed to act in a reasonably prudent manner to stop the misappropriation.

First American filed a motion for partial summary judgment against Defendants Michael A. Eddings, the Law Office of Michael A. Eddings, P.C., and Apex Title, Inc. (collectively, "Eddings Defendants") (ECF No. 121). The Eddings Defendants filed no response to that motion. Having reviewed the motion, the Court grants partial summary judgment in favor of First American as to its claims against the Eddings Defendants to the extent described in the remainder of this Order.

CB&T filed a motion for summary judgment as to First American's claims against it (ECF No. 103). As explained below, the Court finds that genuine factual disputes exist for a jury to decide regarding this claim, and therefore, CB&T's motion is denied.

The Court also has pending before it First American's objection to the use of an audit report prepared by Stewart Title Guaranty Company (ECF No. 99). The Court declines to

2

exclude the audit report but will permit limited discovery regarding the report.

## DISCUSSION

### I. First American's Partial Summary Judgment Motion (ECF No. 121)

First American moved for partial summary judgment as to its claims against the Eddings Defendants for breach of contract, indemnification, and professional negligence. The Eddings Defendants did not respond to First American's partial summary judgment motion or statement of material facts. Therefore, the facts in First American's statement of material facts are deemed admitted pursuant to Local Rule 56. The Court must still review First American's citations to the record to determine whether a genuine fact dispute exists. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The materials submitted by First American in support of its partial summary judgment motion establish the following.

Eddings is the sole owner and principal of the Eddings Law Firm and Apex. The Eddings Law Firm and Apex are parties to title insurance agency agreements with First American for the purpose of issuing owners' and lenders' title insurance policies and collecting premiums. Under the agency agreements, the Eddings Law Firm and Apex had certain duties related to their escrow accounts, including a duty to keep escrow accounts

separate from operating accounts and a duty to disburse escrow funds only for purposes for which they were entrusted. The agency agreements also required the Eddings Law Firm and Apex to cooperate in any title insurance investigation conducted by First American. The agency agreements contain an indemnity provision under which the Eddings Law Firm and Apex agreed to indemnify First American against any loss (including attorneys' fees and expenses) First American may sustain because of any dishonest, fraudulent, malicious, or negligent act or omission by the Eddings Law Firm and Apex. Michael Eddings personally guaranteed the agency agreements of the Eddings Law Firm and Apex. The guarantee expressly includes the indemnity obligation.

In October 2011, First American received a complaint that the Eddings Law Firm failed to disburse loan payoff funds following a residential real estate closing. First American conducted a title insurance audit of the Eddings Law Firm and Apex. During the audit, the Eddings Law Firm's business manager admitted that she regularly diverted funds intended for loan payoffs or seller proceeds out of the escrow account and used the funds for other purposes. First American discovered that the Eddings Defendants failed to disburse payoff funds to numerous lenders and sellers. First American's investigation also revealed that the Eddings Defendants or their employees

4

altered banking records and wire transfer documents to conceal their conduct. The Eddings Defendants did not fully cooperate in the title insurance investigation, and they did not make good on the escrow account shortages. As a result, a number of sellers and lenders did not receive payoff funds from closings Michael Eddings conducted, and they filed title insurance claims with First American. To date, First American has paid $1,551,231.20 in title insurance claims. First American is subrogated to the rights and claims of its insureds upon payment of their respective title insurance claims. First American has also incurred $364,678.44 in attorneys' fees and expenses in this action, as well as $71,861.27 in attorneys' fees and expenses in the related interpleader action.

Based on the present record, First American is entitled to summary judgment on its breach of contract, indemnification, and professional negligence claims against the Eddings Defendants. The undisputed evidence establishes the following. The Eddings Law Firm and Apex breached their contracts with First American by failing to disburse loan payoff funds following real estate closings. Michael Eddings and his firm were professionally negligent when they permitted trust account funds to be diverted and used for other purposes. The Eddings Law Firm and Apex agreed to indemnify First American for losses First American sustained because of any dishonest, fraudulent, malicious, or

5

negligent act or omission by the Eddings Law Firm and Apex. After funds were diverted from the trust account and used for other purposes, a number of sellers and lenders did not receive payoff funds from closings Michael Eddings conducted, and First American paid their title insurance claims totaling $1,551,231.20. First American incurred $436,539.71 in attorneys' fees and expenses in connection with this action and the related interpleader action. Michael Eddings personally guaranteed the agency agreements of the Eddings Law Firm and Apex and the guarantee expressly includes the indemnity obligation. Finally, First American is subrogated to the rights and claims of its insureds upon payment of their respective title insurance claims. Therefore, the Court grants First American's summary judgment motion as to its breach of contract, indemnification, and professional negligence claims against the Eddings Defendants. First American is entitled to recover $1,987,770.91 from the Eddings Defendants on these claims.

First American's other claims against the Eddings Defendants—including the claims for fraud, conversion, unjust enrichment, punitive damages, and attorneys' fees—remain pending.

**II. CB&T's Summary Judgment Motion (ECF No. 103)**

First American contends that CB&T was aware that funds were being misappropriated from the Eddings trust account and that it

failed to act in a reasonably prudent manner to stop the misappropriation.  In support of this contention, First American points to an alleged pattern of negative balances in the Eddings Law Firm trust account, inappropriate attempts by the Eddings Law Firm to make double deposits, and notice to CB&T that wire transfer confirmations had been fraudulently altered by the Eddings Law Firm.  According to First American, CB&T's negligence caused unauthorized payments to be made from the trust account which ultimately caused damage to First American when First American was required to make payments to insure the validity of the title to the properties involved in the misappropriation.  CB&T asserts that it was unaware of the misappropriation until all of the damage had been done and that it acted reasonably when it learned of the fraudulent conduct.

For a bank like CB&T to be liable for its customer's misappropriation of trust account funds, there must be evidence that the bank had knowledge that the customer was acting dishonestly or intended to commit a breach of trust.  *Dalton Point, L.P. v. Regions Bank, Inc.*, 287 Ga. App. 468, 471-72, 651 S.E.2d 549, 552 (2007).  Although a bank is not required to monitor the daily account activity of its customer accounts to look for dishonesty and breach of trust, it cannot ignore evidence that would put it on notice of such activity.  Since the funds in a trust account do not actually belong to the

7

depositor but instead are being held in trust for some other party, negative balances in such accounts would obviously create some concern. While negative balances alone certainly do not place a bank on notice of fraudulent activity, a pattern of negative balances in a fiduciary trust account may indicate that a customer's account activity is attributable to something other than poor arithmetic or carelessness. Yet, a pattern of such negative balances in a trust account may still not be enough to put a bank on notice that its customer is misappropriating deposited trust funds. *See Nat'l Bank of Ga. v. Weiner*, 180 Ga. App. 61, 65, 348 S.E.2d 492, 496 (1986) (finding no evidence that a bank knew that checks submitted by its customer's agent to cure an overdraft in an escrow account constituted misappropriation of escrow funds). Instead, the Court must look at the totality of the circumstances to determine whether those circumstances "reasonably support the *sole* inference" by the bank that a breach of trust was intended by its customer. *Dalton Point L.P.*, 287 Ga. App. at 471-72 (emphasis added). And more precisely, at the summary judgment stage, the Court must determine whether a reasonable jury could conclude that those circumstances would have led a reasonably prudent bank to reach as its only conclusion that its customer was breaching the trust of the intended beneficiaries of the funds deposited in its trust account. Fed R. Civ. P. 56 (stating that summary judgment

8

is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

In this case, First American points to more than simply a pattern of negative balances in the Eddings Law Firm CB&T trust account. Construing the evidence in favor of First American, as required at this stage of the proceedings, the circumstances surrounding the misappropriation of funds from the Eddings Law Firm CB&T trust account are as follows. In 2007, the trust account had negative balances seventeen times, including one for $120,794.80. In 2008, the trust account ran negative balances eighteen times, including one for $224,335.91. In March 2009, CB&T learned that the Eddings Law Firm regularly attempted to "re-deposit" duplicate checks in its trust account using a special on-site deposit device. CB&T found the activity was "more than just an error;" it sent up "Red Flags" and resulted in CB&T shutting the on-site deposit practice down. Faison Dep. Ex. 8, Email from S. Faison to B. Green, *et al.* (Dec. 19, 2008), ECF No. 132-1 at 15. In 2009, the trust account ran a negative balance ten times, including one for $250,861.22. From 2007 through October 2011 (when the trust account was finally closed by CB&T), the trust account ran a negative balance fifty times. Though these negative balances alone are not necessarily sufficient to put CB&T on notice that the Eddings Law Firm was

9

misappropriating trust funds from the account, this evidence cannot be ignored in determining whether CB&T had knowledge of the breach of trust.

In addition to these negative trust account balances and suspicious deposit practices, CB&T learned that the Eddings Law Firm was creating fraudulent wire transfer confirmations to conceal that it was not funding mortgage payoffs following closings.  Specifically, Michael Eddings acted as the closing attorney for the sale of a home on July 27, 2011.  As part of that closing, proceeds from the sale, which had been deposited in the CB&T trust account, were supposed to be used to pay off the seller's previous mortgage on the property.  Shortly after the closing, the seller was notified by his mortgage company that the loan had not been paid off.  When he made inquiry with the Eddings Law Firm, the law firm's business manager told him it had been paid by wire on the day of closing, and she provided him with a purported wire transfer confirmation showing that the mortgage had been satisfied from the CB&T trust account on the closing date.  The seller presented the wire transfer confirmation to CB&T on August 29, 2011 to confirm that the funds had in fact been wired to his mortgage company to pay off the loan.  CB&T quickly confirmed that the wire confirmation provided to the seller by the Eddings Law Firm was fraudulent.  Recognizing the serious nature of this fraudulent activity, an

internal CB&T email on that same day stated: "Stand down! It appears that Michael Eddings [sic] office altered the wire advice in order to show they processed a wire on 7/27 that actually didn't go out until 8/25." Weldon Dep. Ex. 6 at SB018579, Email from D. Stiggers to A. Breeden *et al.* (Aug. 29, 2011), ECF No. 117-1 at 28. A handwritten notation by a CB&T employee appears on the wire confirmation document describing it as "FAKE." *Id.* at SB018572, Funds Transfer Receipt, ECF No. 117-1 at 21.

Therefore, as of August 29, 2011, CB&T knew that its customer had failed to make a timely payoff for a loan closing from a CB&T trust account; that to cover up this failure, its customer manufactured a fake wire transfer confirmation; that its customer had a history of running negative balances in its trust account; and that its customer had engaged in suspicious deposit practices. Notwithstanding these circumstances, the record could be construed to support the finding that CB&T took no action to address the fraudulent activity. Approximately two months later, on October 21, 2011, another fraudulent wire confirmation was brought to its attention, and yet CB&T arguably took no action to address the evidence of fraud until after the Eddings Law Firm's business manager confessed to misappropriation six days later on October 27, 2011, at which time CB&T closed the trust account.

The Court finds that a genuine factual dispute exists as to whether these circumstances could lead a reasonable jury to conclude that the only inference to be drawn from these circumstances is that as of August 29, 2011, CB&T knew that its customer was misappropriating funds from its CB&T trust account. The Court also finds that a genuine fact dispute exists as to whether CB&T acted reasonably upon learning of this misappropriation. Finally, the Court finds that a genuine factual dispute exists as to whether CB&T's negligence proximately caused First American any damages. The Court, however, finds as a matter of law that First American's damages would be limited to any damages First American sustained because of misappropriations from the CB&T trust account that occurred after August 29, 2011. For all of these reasons, CB&T's summary judgment motion (ECF No. 103) is denied.

### III. First American's Objection to Stewart Title Guaranty Company Audit (ECF No. 99)

The Eddings Defendants had an agency agreement with title insurance company Stewart Title Guaranty Company until 2009. In his deposition in August of 2013, Michael Eddings testified that Stewart Title conducted an audit of the Eddings law firm and Apex Title in 2009. CB&T subpoenaed Stewart Title's records related to the audit, which were produced to CB&T a month before discovery closed in this case on November 1, 2013. CB&T secured

permission from Stewart Title to produce the documents to First American and produced the documents to First American on October 24, 2013. Because the documents were not subpoenaed or produced until shortly before the close of discovery, the parties were not able to conduct discovery regarding the Stewart Title documents. First American therefore objects to the use of the Stewart Title documents at trial. In the alternative, First American seeks to reopen discovery for forty-five days for the limited purpose of conducting discovery regarding the Stewart Title documents. The Court declines to exclude the Stewart Title documents. The Court permits the parties to engage in discovery regarding the Stewart Title documents. The parties shall have until Friday, February 21, 2014 to conduct this additional discovery.

## CONCLUSION

As explained in this Order, First American's partial summary judgment motion against the Eddings Defendants (ECF No. 121) is granted, CB&T's summary judgment motion (ECF No. 103) is denied, First American's motion to exclude the Stewart Title Guaranty Company audit documents (ECF No. 99) is denied, and First American's request to reopen discovery is granted.

IT IS SO ORDERED, this 9th day of January, 2014.

s/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE